**LAPINEE TRADE, INC.,**
Plaintiff–Appellee,

v.

**BOON RAWD BREWERY CO., LTD.,**
Defendant–Appellant.

No. 95–2934.

United States Court of Appeals,
Seventh Circuit.

Argued March 25, 1996.

Decided July 30, 1996.

Robert P. Vogt (argued), Bullaro, Carton & Stone, Chicago, IL, James D. Montgomery, Montgomery & Associates, Chicago, IL, for Plaintiff–Appellee.

J. Patrick Herald, Donald J. Hayden, Baker & McKenzie, Chicago, IL, Thomas R. Meites, Paul W. Mollica, Meites, Frackman, Mulder & Burger, Chicago, IL, Vivian L. Schneider (argued), San Francisco, CA, for Defendant–Appellant.

Before BAUER, RIPPLE, and EVANS, Circuit Judges.

BAUER, Circuit Judge.

After a one week bench trial, the district court found that Boon Rawd Brewery Co., Ltd. wrongfully terminated its distributorship agreement with Lapinee Trade, Inc.. Subsequently, the district court conducted an extensive hearing on damages, and awarded Lapinee $668,022.63 as compensation for three years of lost profits. Boon Rawd appeals only the damage award, raising three challenges to the district court's findings. Boon Rawd argues that the district court erred in: (1) awarding any damages at all; (2) awarding three years of lost profits; and (3) failing to include Lapinee's interest expense in calculating its lost profits. We agree in large part with the district court's resolution of a complex calculus, but remand for a recalculation of the damages to account for interest expense.

First a little background—we take the facts as found by the district court. From approximately 1982 until 1987, Lapinee, a California corporation owned by Mr. Chalermchai Harntha and Mrs. Lapinee Harntha, imported and distributed Singha beer. Boon Rawd is the Thailand corporation that brews, bottles, and exports Singha beer. In the early 1980's, Mr. and Mrs. Harntha, doing business as Lapinee Trade, Inc., reached an oral agreement with Boon Rawd to distribute Singha in California. At the time, Singha was not well-established in the American market, and Lapinee had to build a market for it. The early days were difficult for Lapinee. For example, because Singha's labels initially did not conform to California labelling laws, the Harnthas had to relabel by hand every bottle of beer they sold—approximately 1.2 million bottles.

In July 1982, the Harnthas urged Boon Rawd executives to permit Lapinee to market Singha in Arizona and Nevada as well as California. Boon Rawd authorized the expansion, and agreed to memorialize the California marketing agreement, which they did in a letter in July 1982. In early 1983, while Lapinee had begun building a market for Singha in California, Arizona, and Nevada, Lapinee requested permission to sell Singha in the state of Washington. Boon Rawd agreed and issued an appointment letter in September 1983.

Although all of the appointment letters are worded as one year grants of authority to distribute Singha, the district court found that

> Boon Rawd issued such appointment letters for the purpose of allowing the distributor to obtain a state license and did not intend thereby to limit sales authority to a prescribed duration. It appears after the first or in some cases second letter of appointment, Boon Rawd frequently issued no further appointment letters, even though both Boon Rawd and the distributor intended that distribution activities continue.

Boon Rawd does not challenge this factual finding, although as we discuss later, they are none too happy with it. Things between Boon Rawd and Lapinee went along swimmingly throughout 1983, 1984, and much of 1985. As of late 1985, Lapinee had expanded its sales area into Illinois, Minnesota, and Texas in addition to California, Nevada, Arizona, and Washington.

Eventually, however, the relationship deteriorated.[1] On October 8, 1987, Boon Rawd terminated Lapinee as distributor effective December 7, 1987. Boon Rawd provided no reasons for the termination at that time. The district court found that it was the custom and practice in the beer industry to terminate a distributorship only for good cause. The court also found that "Lapinee put great time and money into developing an American market for Singha beer and used its best efforts to build the market and sell Singha and the distributorship was taken from it before it could reap any substantial benefit from its investment." Accordingly, on January 19, 1995, the district court found Boon Rawd liable for wrongful termination of the distributorship agreement and set the matter for hearing on damages.

It turns out that Lapinee neither maintained nor retained clear business records over the years. Thus, the court found Lapinee's business records "of little help." Nevertheless, because the court found that it was more likely than not that Lapinee had been damaged, the court determined that Boon Rawd had deprived Lapinee of lost profits. Unfortunately, the district court had a devil of a time figuring out the appropriate measure of damages. The parties agreed that "lost profits" were the appropriate focus of the damage hearing, but disagreed about the amount. Boon Rawd used Lapinee's tax and business records, such as they were, to show that because Lapinee operated in the red, there was no likelihood of any future profit

and the court should award zero damages. However, the significance of the tax and other business records was questionable because they covered both Lapinee's beer business and an associated travel agency. Lapinee presented testimony from a number of lay and expert witnesses in support of their request for 10 years of lost profits. The district court awarded three years of lost profits in the amount of $668,022.63.[2]

■ We review the district court's damages calculations for clear error, and will reverse only where the calculation is "clearly unreasonable." *R.E. Davis Chemical Corp. v. Diasonics, Inc.,* 924 F.2d 709, 712 (7th Cir.1991). "Because fixing a damage award is an exercise in fact-finding, only those awards that are monstrously excessive, born of passion and prejudice, or not rationally connected to the evidence may be altered." *Pincus v. Pabst Brewing Co.,* 893 F.2d 1544, 1554 (7th Cir.1990). Furthermore, credibility determinations are the sole province of the district court, to which we owe special deference. *U.S. v. Fidelity and Deposit Co. of Maryland,* 986 F.2d 1110, 1116 (7th Cir.1993) (citations omitted). Because this is a diversity contract dispute, we apply Illinois' "most significant contacts" test to determine which substantive law governs. *See CSX Transp. v. Chicago and North Western Transp.,* 62 F.3d 185, 188–189 (7th Cir.1995). Here the district court found, and neither party disputes, that the most significant contacts were with California. We agree, so we also apply California substantive law.

### 1. Damages

We give short shrift to Boon Rawd's argument that irrespective of the district court's liability finding, the district court should have awarded Lapinee zero damages. Although we acknowledge that the district court's method for quantifying Lapinee's

---

1. The district court initially found that the deterioration stemmed from certain Boon Rawd executives' demands for a share of the business. However, on reconsideration, the district court withdrew this finding, reasoning that "[s]ince the court has found that Boon Rawd terminated Lapinee without good reason, there is no point in speculating as to whether there was a reason...."

2. The district court calculated Lapinee's annual profit by multiplying the number of cases of beer sold (124,399) by Lapinee's average profit per case ($1.79) to reach an average annual profit of $222,674.21. The final figure represents three years of average annual profits.

damages was a bit creative (for example, the court used a 25 percent "fudge factor" to reduce Lapinee's inflated per case profit), we conclude that the district court did not err in awarding damages. We are in accord with the district court's observation that "[s]ince there is no reason to believe that [Lapinee] was distributing Singha as a charitable enterprise, it is reasonable to conclude that it suffered damage."

■ Under California law, courts recognize that in fashioning a damages award of lost profits, "evidentiary imponderables are unavoidable." *Guntert v. City of Stockton,* 55 Cal.App.3d 131, 126 Cal.Rptr. 690, 696 (1976). Furthermore, California law allows "reasonably calculated damages even if the result is only an approximation...." *Id.* at 697. In attempting to ascertain the appropriate measure of lost profits, "trial courts must do the best they can and use all available facts to approximate the fair and reasonable damages under all of the circumstances." *Id.* Once lost profits have been ascertained, "recovery will not be denied because the amount cannot be shown with mathematical precision." *Resort Video, Ltd. v. Laser Video, Inc.,* 35 Cal.App.4th 1679, 42 Cal.Rptr.2d 136, 146 (1995).

■ Boon Rawd is unhappy that the district court came down on Lapinee's side on damages.[3] Boon Rawd relies in large part on the fact that the admittedly skimpy documentary evidence demonstrates that Lapinee lost money, and therefore should not receive future profits. However, the district court is not required to credit skimpy documentary evidence over the testimony of Lapinee's lay and expert witnesses. We decline to reweigh the evidence presented at trial, nor will we revisit the district court's credibility determinations. *See U.S. v. Fidelity and Deposit Co. of Maryland,* 986 F.2d at 1116. We have reviewed the record and have no trouble concluding that the district court followed California law in awarding Lapinee lost profits.

## 2. *Three Years of Lost Profits*

■ Next, Boon Rawd contends that the district court erred in awarding three years of lost profits because under California law, the district court should have limited Lapinee's lost profits to six months to a year. This argument is anchored in the faulty premise that Lapinee's distributorship was terminable "at will." If this were true, it appears that California law would limit lost profits to six months to a year. *See Distillers Distributing Corp. v. J.C. Millett Co.,* 310 F.2d 162, 163 (9th Cir.1962); *cf. Sierra Wine & Liquor Company v. Heublein,* 626 F.2d 129 (9th Cir.1980)(Nevada law). But the district court found, as part of its unappealed liability determination, that the parties' agreement contained an implied requirement that the agreement be terminated only for cause. Boon Rawd has not challenged this finding, and it is stuck with it.

■ So, the at-will cases Boon Rawd cites as supporting its six months to a year limitation on lost profits are irrelevant. As a result, the district court was free to fashion a reasonable period of lost profits in excess of one year. The district court rejected Lapinee's proposal of 10 years as "unreasonable," because "beer manufacturers and distributors are not actually locked into lifelong relationships." Boon Rawd presented evidence that the industry practice and custom was for manufacturers to pay one year of damages to distributors when the manufacturer wished to break a distributorship agreement. However, this represented the industry custom and practice for negotiated settlements, not for compensating a manufacturer's wrongful termination. Furthermore, the district court found that Boon Rawd's actions ruined Lapinee. After carefully reviewing the entire record, we hold that the district court's selection of three years as the period of damages was not unreasonable given the parties' six year relationship and the devastating effect of the wrongful termination on Lapinee.

**3.** Despite Boon Rawd's protestations to the contrary, the district court did not side completely with Lapinee. Far from it. Lapinee sought ten years of profits, but received only three. The district court also rejected Lapinee's claim that it should receive an additional $800,000 in damages because Boon Rawd's wrongful termination soured a deal Lapinee had with a nationwide beer distributor called Wisdom. The district court concluded that it lacked an adequate basis for awarding damages based on the Wisdom agreement, pointing out that "there is nothing in the record to permit [a] quantification [of damages flowing from the Wisdom agreement]."

### 3. Interest Expense

■ While we agree with the district court that three years of lost profits is an appropriate damage award, we are forced to take issue with the court's calculation of the precise amount of lost profits. Boon Rawd argues that the district court erred in excluding interest expense when calculating Lapinee's lost profits. We agree. Boon Rawd raised the same argument below, but the district court rejected it, stating that "[d]efendant has provided no legal support for its theory that interest expense must be included in plaintiff's cost and the court declines to include it." If by "no legal support" the district court meant no legal authority, this comment overlooks the fact that Boon Rawd cited various California cases for this proposition in a number of pretrial filings.

Under California law, a court may award lost profits as a remedy for a breach of contract if "the evidence shows with reasonable certainty both their occurrence and extent thereof." California Civil Code Section 3301; *Resort Video*, 42 Cal.Rptr.2d at 146. In this context, California courts consistently have defined "lost profits" to mean net profits. *Id.* And, of particular significance in this case is the definition of "net profits" under California law.

> Net profits are the gains made from sales after deducting the value of the labor, materials, rents, and all expenses, *together with interest of the capital employed.*

*Id.* at 147–148 (emphasis added), *quoting Gerwin v. Southeastern Cal. Assn. of Seventh Day Adventists*, 14 Cal.App.3d 209, 92 Cal.Rptr. 111, 118–119 (1971).

At oral argument, Lapinee's able counsel attempted to interpret the district court's statement about Boon Rawd's failure to cite authority regarding interest expense vis-a-vis lost profits. Lapinee's counsel argued that by using the phrase "defendant has provided no legal support" the district court meant that Boon Rawd failed to present evidence that interest expense should not be included in calculating lost profits. Indeed, Lapinee argues that experts for both sides testified at trial that interest expense is not included in calculating lost profits. Even assuming that Lapinee correctly interprets the district court's statement, which we doubt, it does not represent a permissible interpretation of California law.

Lapinee retorts that the district court was free to ignore California law in the face of undisputed expert testimony that interest expense is not included in net profits for beer distributorship businesses. Unfortunately, the expert testimony on this issue was neither consistent nor entirely comprehensible. Lapinee's expert testified that all costs of doing business are deducted from revenues in determining net profits. Boon Rawd's expert testified that unless interest expense is deducted, such a calculation amounted to "operating margin," not net profits. Boon Rawd's expert did testify that he "removed [interest expense] for the lost profits calculation." He added that

> [w]hen you evaluate business or value lost profits, you look strictly at the operating performance and not the financial charges. So we backed that out. Lapinee had backed that out as well from her analysis and [Lapinee's expert's] analysis.

Apparently, the district court took this expert's testimony at face value and ignored interest expense. Both parties agree that as a general matter under California law, interest expense is a necessary component of net profit. Lapinee argues, however, that the experts provided the district court reason to depart from the general rule. We disagree. Neither expert testified about why interest expense is not a component of net profit for a beer distributor. But that is essentially Lapinee's argument. Although we can't figure out why the experts excluded interest expense, assuming they did, we are sure of one thing: under California law, interest expense is a component of net profit and the district court may not ignore California law, even if both experts suggest such a course of action.

We regret that a remand is necessary in this case given the district court's yeoman efforts in resolving an extremely complicated damages calculation. At oral argument, Lapinee's counsel argued against a remand given that both experts would again testify that interest expense should be excluded from net profit. We doubt that will happen. We remind both parties that our remand is limited to factoring Lapinee's interest expense into its lost profits. We recognize that this may not be a simple process given the state of

Lapinee's books. Nevertheless, we must follow California substantive law and have no choice but to send this matter back for one more go at damages.

## CONCLUSION

For the foregoing reasons, we affirm in part and remand to the district court for a recalculation of damages.

AFFIRMED IN PART AND REMANDED.