FRANK NOVAK AND SONS, INC., Plaintiff-Appellee and Cross-Appellant, v. SOMMER AND MACA INDUSTRIES, INC., Defendant-Appellant and Cross-Appellee.

First District (2nd Division)   No. 1—88—1953

Opinion filed April 25, 1989.—Rehearing denied May 25, 1989.

Winston & Strawn, of Chicago (James J. White, of counsel), for appellant.

Richter & Jaros, of Chicago (Thomas C. Dudgeon and Arthur G. Jaros, Jr., of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

This suit was filed by plaintiff-appellee and cross-appellant Frank Novak & Sons (Novak) to obtain payment based on numerous invoices submitted over a period of years to defendant-appellant and cross-appellee Sommer & Maca Industries (Somaca), representing goods shipped to and accepted by Somaca over that period. In a bench trial, judgment was entered for Novak in the amount of $353,898.78.

The issue raised in the appeal is when Novak's cause of action accrued for purposes of the applicable limitations period. The issue raised in the cross-appeal is whether Novak is entitled to prejudgment interest.

Somaca assembles, manufactures, and markets glass cutting and polishing machinery. Novak is operated by brothers Frank and Laddie Novak and fabricates sheet metal parts for use in various machines. Both are closely held Illinois corporations, which began doing business with each other in 1953.

The evidence reveals that, typically, Somaca submitted a written purchase order to Novak accompanied by drawings, blueprints, and specifications, which Novak would then fabricate accordingly. Somaca later integrated the parts into the machines it assembled. Novak's work was priced on a "time and material" basis. For every purchase order submitted by Somaca, Novak completed the work and the fabricated products were accepted by Somaca without objection. This business relationship continued until late 1976. The exact nature of this relationship is subject to contradictory testimony and conflicting, incomplete business records presented by both parties.

Sometime in the 1960s, Somaca began objecting to Novak's slow billing methods. In 1966, counsel for Somaca wrote three letters (the 1966 letters) to Novak strongly requesting that it send bills in a regular and timely fashion and outlining a new policy for payment when invoices were not sent within 30 days of delivery of the goods. These letters were personally shown to Frank and Laddie Novak in 1966 by Somaca employee Paul Proska. Frank read the letters and agreed with their contents. Proska kept possession of the letters; Frank had no copies. Thereafter, Novak sent some bills to Somaca.

Despite continued billing problems in subsequent years, business

continued between the parties. In accordance with the August 15, 1966, letter from Somaca's counsel, when Novak did not submit an invoice within 30 days for work completed, Somaca's cost accounting department estimated the probable charges for Novak's products so that Somaca could price its own machines, which incorporated Novak's fabrications, for later sale to its customers. When Somaca received invoices more than 30 days after the goods were delivered, it paid Novak only the estimated amount, a compensation policy which also had been outlined in the August 15, 1966, letter. Novak accepted two such payments in 1968. Around 1969, Novak stopped sending invoices to Somaca, and Somaca stopped requesting them. Somaca continued to submit purchase orders to Novak, however, and Novak continued to deliver the fabricated products as ordered.

This somewhat unique business relationship between the parties persisted until October 1976. According to Somaca, Novak did not bill it from 1969 through 1976. Novak's former accountant, however, testified to billings of Somaca for about $30,000 in 1975 or 1976. Despite Frank Novak's concern about the uncompensated work, he explained he "just didn't have the time" to bill Somaca due to the amount of work and the small size of his business. In 1971 or 1972, Frank requested and received "advances" from Somaca totalling $7,840 and $9,800.

During this period, Somaca did not send Novak written requests for invoices, but Jack Hynes, Somaca's comptroller, testified that prior to 1971, he orally solicited prompt billing three times, which Laddie Novak laughed off. Somaca's independent auditor also averred he sent annual requests to Novak, which went unanswered, in an effort to determine the amount of the indebtedness. Somaca's records did not reveal any payments to Novak after 1972. According to one of Novak's outside accountants, however, Novak's records show it received $10,500 and $10,574.39 payments from Somaca in late 1974 or 1975.

During the 1969-77 period, Somaca recorded its estimates of the amount owed Novak as an account payable in its ledgers and as part of the accounts payable balance in its financial statements. The estimated costs of the goods were deducted from Somaca's corporate income. These estimations, kept on a running basis, eventually reached $353,898.78.

For the same period, Novak reflected the sales to Somaca as a running account in its own books. Somaca's work was such a major part of Novak's business that it maintained a separate Somaca general ledger accounts receivable line. The Somaca general ledger re-

ceivables ranged from $27,793 to $62,692 between 1971 to 1977. In 1977, the ledger amount owed by Somaca to Novak was $58,079. Novak later suggested that its ledger was not properly maintained and did not reflect the actual amount receivable from Somaca.

Novak's billing of Somaca was "speeded up" when the United States Internal Revenue Service began inquiring about the outstanding Somaca accounts receivable. In July 1977, Novak delivered a "batch" of invoices to Somaca for work completed in 1969 and following years. A second group was delivered in December 1977 or January 1978; in all, over 1,100 invoices reflected an amount owed to Novak, as stipulated by the parties, of $491,683.15.[1] After full payment was refused, Novak filed a verified complaint in August 1978 praying for $474,570.65.[2]

Novak's complaint is based upon three theories: (1) an account stated; (2) breach of contract; and (3) *quantum meruit*. Somaca admits that Novak completed all work satisfactorily and in a timely fashion, but denies any obligation to pay for goods delivered prior to September 1974. It raised several affirmative defenses, including the Uniform Commercial Code (UCC) statute of limitations in contracts for sale (Ill. Rev. Stat. 1977, ch. 26, par. 2—725), waiver, and *laches*. Somaca further admitted owing $74,431.03 for invoices representing goods delivered to it within four years of the 1977 billing.

Following extensive pretrial proceedings, the case went to bench trial on April 7, 1988. After considering testimony, other evidence, briefs, and arguments of counsel, the circuit court, in a written order dated May 23, 1988, found as follows:

(1) palpable *laches* and failure to follow reasonable business practices was attributable to both parties;

(2) the 1977 invoices delivered by Novak were stale and self-serving estimates;

(3) there was no cause of action for an account stated;

(4) the equitable remedies of *quantum meruit* and *quantum valebant* were inappropriate; and

[1]According to Somaca's brief, this stipulation was not made part of the record; however, both parties refer to this stipulation, which is reproduced in the appendix attached to Somaca's brief.

[2]There are considerable differences between the various amounts allegedly owed by Somaca to Novak, according to the documents:
(1) $58,079 (Novak's own ledger);
(2) $353,898.78 (Somaca's own estimates for its accounts payable calculation);
(3) $474,570.65 (Novak's sworn prayer);
(4) $491,683.15 (stipulated total of invoices included in the 1977 billings).

(5) Novak's cause of action accrued at the time Somaca first refused to make payment.

Resorting to "equitable principles to effect substantial justice," the court entered judgment in Novak's favor and against Somaca for $353,898.78, plus court costs, and without interest or penalty. Somaca thereafter filed its notice of appeal, seeking complete reversal of the judgment and, seven days later, Novak filed a cross-appeal, contesting the circuit court's denial of prejudgment interest.

For the purposes of this appeal, we consider certain portions of the circuit court's order as critical:

"The Court finds that the lack of seasonable invoicing or timely demand for payment, and the failure of [Somaca] to remit or offer any payment, puts the alleged breach beyond the strictures of the 'tender of delivery' date as the date of accrual of the cause of action, and the applicability of the Uniform Commercial Code at Chapter 26, 2—725 [citation]. The action accrued at the time the buyer refused to make payment.

Under the circumstances and the findings of the court, the court, relying on the provisions of the Uniform Commercial Code at Chapter 26, sections 1—102(3), 1—203, 1—204, and 1—205 has resorted to equitable principles to effect substantial justice."

These cited provisions of the UCC refer to sections providing: variation of the UCC provisions by alternative agreement (section 1—102(3)); the obligation of good faith (section 1—203); the explanation of "reasonable time" and "seasonably" (section 1—204); and the definition of "course of dealing" (section 1—205).

I

The only issue Somaca raises on appeal is whether the circuit court erred in deciding that the cause of action did not accrue until Somaca refused to make payment. It initially contends that no agreement existed between the parties as to when payment was due and, therefore, the gap-filling provisions of the UCC establish that payment was due at the time of delivery of the goods. (Ill. Rev. Stat. 1977, ch. 26, par. 2—310.) Somaca then suggests that its failure to pay Novak at the time of delivery constituted a breach of contract under the UCC, and any cause of action accrued at that point. Under the statute of limitations provided in the UCC, Somaca continues, an action for breach of any contract for sale of goods must be commenced within four years after the cause of action has accrued. (Ill. Rev. Stat. 1977, ch. 26, par. 2—725(1).) Somaca concludes that section

2—725 cuts off any claims concerning payment for goods shipped prior to September 1974, since any cause of action arising out of these deliveries would have accrued more than four years before Novak filed suit.

■■ It is evident that the circuit court found some agreement for payment between the parties represented by their course of dealings, which is allowed by section 1—102(3) of the UCC in variance of otherwise applicable UCC provisions. Section 1—205 defines "course of dealing" as a "sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." (Ill. Rev. Stat. 1977, ch. 26, par. 1—205(1).) The exact nature of the parties' understanding as found by the circuit court is not entirely clear; however, its holding implies that, based upon their course of dealing, the parties required no payment for the fabricated goods until requested by Novak. Under the UCC, a course of dealing may be considered in the determination of the existence or proper construction of an agreement. (See Ill. Ann. Stat., ch. 26, par. 1—205, Illinois Code Comment, at 61-63 (Smith-Hurd 1963).) On review, the construction given an agreement by the circuit court will not be set aside unless contrary to the manifest weight of the evidence. *Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 127, 392 N.E.2d 363.

■ UCC section 2—310 in part provides (Ill. Rev. Stat. 1977, ch. 26, par. 2—310):

> "*Unless otherwise agreed* payment is due at the time and place at which the buyer is to receive the goods ***." (Emphasis added.)

Clearly, then, the parties are free to agree otherwise as to when payment would be due. Other UCC sections are in accord. Section 1—203(3) (Ill. Rev. Stat. 1977, ch. 26, par. 1—102(3)) states:

> "The effect of provisions of [the Code] may be varied by agreement, except as otherwise provided *** *but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.*" (Emphasis added.)

See also Ill. Ann. Stat., ch. 26, par. 1—201, Uniform Commercial Code Comment, comment 3, at 48 (Smith-Hurd 1963).

Under section 2—310, therefore, "it is of no consequence that delivery by the seller or payment by the buyer is deferred—the parties are free to agree as to time of delivery and the terms of payment." (*Superior Partners v. Professional Education Network, Inc.* (1985), 138 Ill. App. 3d 226, 231, 485 N.E.2d 1218.) Although payment of the

purchase price ordinarily would be due upon delivery, the parties here "otherwise provided." *R.G. LeTourneau, Inc. v. Quinn Equipment Co.* (1970), 131 Ill. App. 2d 295, 297-98, 266 N.E.2d 151.

■ Section 1—201(3) defines an "agreement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." (Ill. Rev. Stat. 1977, ch. 26, par. 1—201(3).) These "other circumstances" are relevant to the parties' bargain in fact and reflect a legislative policy in favor of the court's determining the actual agreement of the parties. (See *Personal Finance Co. v. Meredith* (1976), 39 Ill. App. 3d 695, 702, 350 N.E.2d 781.) Therefore, the course of performance[3] or course of dealing between parties may demonstrate an agreement that would displace a section 2—310 requirement of payment due upon tender of delivery. *Cf. R.G. LeTourneau, Inc.*, 131 Ill. App. 2d at 297-98.

In the instant case, the circuit court's finding of an alternative agreement between the parties, based on their course of dealing, and its resultant conclusion that Novak's cause of action did not accrue upon delivery, but upon Somaca's failure to pay when requested, were not against the manifest weight of the evidence.

■ The record evidence supports the circuit court's finding of an alternative agreement for payment based on the parties' course of dealing. Richard Carroll, executive vice-president of Somaca, testified that in the history of Novak's account, *when Somaca received an invoice*, it was paid in a timely fashion. Frank Novak recalled that Somaca always paid promptly when billed, but he never submitted a bill at the time of delivery of the goods, nor was he ever requested to do so. Laddie Novak described the "typical way" Somaca acknowledged

---

[3]Under section 2—208(1) (Ill. Rev. Stat. 1977, ch. 26, par. 2—208(1)):

"Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

Course of dealing refers to "a sequence of conduct between the parties *previous· to* the agreement in controversy as contrasted to the sequence of conduct after the agreement or a practical construction of it by the parties," which is course of performance. (Emphasis in original.) (Ill. Ann. Stat., ch. 26, par. 1—205, Illinois Code Comment, at 62 (Smith-Hurd 1963).) The exact nature of the conduct in this case appears to be both previous and subsequent to the "agreement"; both course of dealing and course of performance may have equivalent meaning in certain instances, making a detailed differentiation unnecessary here. See Ill. Ann. Stat., ch. 26, par. 1—205, Uniform Commercial Code Comment, comment 2, at 65 (Smith-Hurd 1963).

receipt of an invoice: sending Novak a check.

The three 1966 letters provide additional evidence in support of the circuit court's finding of an agreement based on course of dealing. These letters demonstrate that Somaca intended to pay for Novak's goods not at the time of delivery, but after the submission of invoices. The letters do not specifically provide the payment agreement between the parties,[4] but reflect Somaca's intent to pay no more than its own estimate when the invoices were not timely and go to the amount due, not the payment date. The letters thereby provide additional evidence of a course of dealing where payment was not considered due until after the receipt of an invoice or other similar billing request. Indeed, Novak's response to the letters was to send bills to Somaca, which were then paid.

This interpretation of the 1966 letters is confirmed by Novak's exhibits 22 and 23, statements of invoices that accompanied two Somaca payments in 1968 resulting from Novak's billings, at the bottom of each of which is a reference to the August 1966 letter, indicating that Somaca would only pay the estimated amount on invoices submitted after 30 days. The reference corresponds to a deduction of an amount of the invoice totals and represents losses that Somaca "incurred in understating costs" in its estimates. These statements further support the theory that payment was not considered due until the submission of invoices from Novak.[5]

Based upon the foregoing, we cannot find that the circuit court's conclusion was against the manifest weight of the evidence.

■ It is true that section 2—725(1) does not permit an agreement between the parties to extend the period of limitations beyond four

---

[4]The letters do not constitute the agreement between the parties, but merely provide evidence that Somaca did not intend to pay Novak until some manner of request, such as an invoice, was received, and so provide support for the court's finding of an agreement for payment as shown by course of dealing.

[5]Novak also contends that Somaca, in its original verified answer, made a binding judicial admission that payment was to be made only after receipt of an invoice. Somaca originally answered that it agreed to pay Novak for "each order *upon being invoiced* promptly and accurately and after satisfaction to [it] that the price for the work was fair and reasonable." (Emphasis added.) In an amended answer, Somaca averred the only express factual agreement between the parties concerned place of delivery and quantity, and that if Novak submitted invoices simultaneously with or promptly after delivery, Somaca would pay promptly. We find the verified original answer, as underscored above, to be a judicial admission that no payment was anticipated at the time of delivery. *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 929, 427 N.E.2d 317; *Dark v. United States Fidelity & Guaranty Co.* (1988), 175 Ill. App. 3d 26, 33-34, 529 N.E.2d 662.

years. (Ill. Rev. Stat. 1977, ch. 26, par. 2—725(1).) Because the parties through their course of conduct had agreed that payment was not due until requested by Novak, however, the statute of limitations is not extended; rather, the cause of action did not accrue, and the four-year limitations period did not begin to run, until payment was refused.

Somaca insists that this interpretation thwarts the policy behind the statute of limitations, to prevent recovery on stale demands. (*Benyon Building Corp. v. National Guardian Life Insurance Co.* (1983), 118 Ill. App. 3d 754, 762, 455 N.E.2d 246.) This argument disregards the nature of the ongoing business relationship between the parties, which was maintained through late 1976. Somaca continuously sent purchase orders to Novak, which fabricated the goods and delivered them according to each order. Despite its expressed displeasure, from mid-1966 and after, with the billing procedure, Somaca continued to order from Novak, accepting the goods without complaint and, for the most part, making few payments. Somaca at no time told Novak that it would refuse to pay for goods delivered four years prior to any eventual billing. Instead, Somaca provided its own procedure to be followed for late billings, in which Novak acquiesced. It may well have been this aspect of the case which caused the circuit court to note the requirement of good faith in the performance of all duties under the UCC (Ill. Rev. Stat. 1977, ch. 26, par. 1—203) as part of its finding that the action accrued at the time the buyer refused to make payment.

The policies behind section 2—725 are not frustrated by the circuit court's finding regarding accrual of the cause of action under the circumstances here presented. The policy "that commercial interests are best served by quickly bringing finality to commercial transactions" (Ill. Ann. Stat., ch. 26, par. 2—725, Illinois Code Comment, at 613 (Smith-Hurd 1963)) is not contravened where such transactions between the parties are continuous and ongoing, as in the present case. The judgment of the circuit court concerning accrual of the cause of action must be affirmed.

## II

On cross-appeal, Novak asserts that the circuit court erred in refusing to award prejudgment interest on the full amount of the judgment or, alternatively, on the $74,431.03 admittedly owed but not paid by Somaca until later.

■ Prejudgment interest is awarded or denied on the basis of fact and, unless contrary to the manifest weight of the evidence, the circuit court's determination will not be altered. (*Pietka v. Chelco*

*Corp.* (1982), 107 Ill. App. 3d 544, 558, 437 N.E.2d 872.) Novak's request for prejudgment interest was based upon section 2 of the act (section 2) regulating interest accrual (Ill. Rev. Stat. 1987, ch. 17, par. 6402). Absent express agreement between the parties otherwise, allowance of interest depends on this statutory authority. *Hamilton v. American Gage & Machine Corp.* (1976), 35 Ill. App. 3d 845, 852, 342 N.E.2d 758.

■ Novak claims that the August 15, 1966, letter, the subsequently issued purchase orders, and the typed 1977 invoices satisfy the statutory requirements for an "instrument of writing" required by section 2. As previously noted, however, the agreement found by the circuit court was based on the course of dealing between the parties, and not upon any written instrument. The 1966 letters merely evidence the course of dealing between the parties. Assuming, for the sake of argument, that the purchase orders referred to by Frank and Laddie at trial could be deemed sufficient written instruments under the statute (*Hufford v. National Retailer-Owned Grocers, Inc.* (1958), 16 Ill. App. 2d 1, 11, 147 N.E.2d 437), only one such purchase order from 1970 was presented to the court and reflected a charge of less than $1,000; it was never received into evidence, but was marked for identification purposes only, and was used solely as an aid in explaining Novak's billing procedures. The 1977 invoices were explicitly determined by the circuit court to be stale and self-serving estimates arrived at after the amicable business relationship between the parties worsened. The circuit court did not err in rejecting the invoices as insufficient to constitute written agreements.

■ Further, there was no fixed and easily calculated amount due. (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 29, 473 N.E.2d 588; *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 251, 323 N.E.2d 73.) Novak's records reflected a Somaca debt of $58,000; Somaca's estimates, repeatedly described in trial testimony as "guesses," showed $353,899; the invoices found to be stale and self-serving estimates amounted to $491,683 due. Given the contradictory trial testimony, with the conflicting and incomplete business records, a fixed and easily calculated amount due did not exist. The circuit court's refusal to award prejudgment interest was not against the manifest weight of the evidence for this reason as well.

■ Somaca's failure to pay the estimated sums carried on its books is claimed by Novak to constitute an unreasonable and vexatious delay which provided an alternative basis for an award of prejudgment interest. Whether Somaca unreasonably and vexatiously delayed payment is a question of fact (*Hamilton*, 35 Ill. App. 3d at 854);

implicit in the circuit court's denial of prejudgment interest here is a factual determination that such delay did not exist. Neither an honest dispute as to the existence of a legal obligation (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 429, 431 N.E.2d 738) nor the defense of a lawsuit can be regarded as an unreasonable and vexatious delay of payment (*Pietka*, 107 Ill. App. 3d at 557-58), unless the dilatory conduct by a litigant approximates actual fraud (*Emmenegger Construction Co.*, 103 Ill. App. 3d at 430; *Hamilton*, 35 Ill. App. 3d at 853-54), or obstacles have been thrown in the way of collection, or the debtor has otherwise induced the creditor to delay collection proceedings (*Pietka*, 107 Ill. App. 3d at 558).

■■ A genuine dispute appears to have existed in the present case concerning the legal obligation to pay for goods delivered prior to September 1974. Somaca's assertion of the statute of limitations defense is not unreasonable under the circumstances. The circuit court's determination that prejudgment interest was not appropriate on the full estimated amount is not against the manifest weight of the evidence.

As to the debt for goods delivered after September 1974, Somaca has always admitted it owed something and stipulated that the amount was $74,431.03; at trial, however, it claimed that Novak never asked for it. Additionally, Somaca's attorney stated that "in due course we will write a check and pay" the $74,431.03 amount, and at no time was there a discussion about interest on that figure. The exact circumstances surrounding Somaca's failure immediately to pay the post-September 1974 debt are unclear; possibly, it may have been related to the litigation. Novak, which bears the burden on cross-appeal, offers only its conclusion that Somaca's delay in payment is unreasonable and vexatious, but does not demonstrate conduct approximating fraud, "obstacles" put in the way of collection by Somaca, or any evidence that Somaca "induced" Novak to delay collection proceedings.

For the reasons set forth above, the judgment of the circuit court must be affirmed.

Affirmed.

SCARIANO and EGAN,* JJ., concur.

---

*Justice Egan participated in the decision of this case prior to becoming a member of the sixth division.