# In the
# United States Court of Appeals
## For the Seventh Circuit
―――――――

No. 07-1879

IN RE:

RESOURCE TECHNOLOGY CORPORATION,

*Debtor*,

CHIPLEASE, INC. and
SCATTERED CORPORATION,

*Plaintiffs-Appellants*,

*v.*

JAY A. STEINBERG, as Chapter 7 Trustee
for RESOURCE TECHNOLOGY CORPORATION, *et al.*,

*Defendants-Appellees.*

―――――――

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 5541—**Matthew F. Kennelly**, *Judge.*

―――――――

ARGUED DECEMBER 7, 2007—DECIDED MAY 15, 2008

―――――――

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Plaintiffs-appellants Chiplease, Inc. and Scattered Corporation (collectively, "Scattered") wanted to step into the shoes of debtor Resource Technology Corporation ("RTC") in a contract that RTC had

with American Disposal Services of Illinois, Inc. ("ADS").
After the trustee of RTC's estate refused to seek the bank-
ruptcy court's permission to assume the ADS agree-
ment and assign it to Scattered, Scattered asked the bank-
ruptcy court to compel the trustee to do so. The bankruptcy
court denied Scattered's request, concluding that the
agreement had already expired and that a motion by
the trustee to assume the agreement would conse-
quently be frivolous and subject to sanctions. Scattered
appealed to the district court, which affirmed the bank-
ruptcy court's decision. *Chiplease, Inc. v. Steinberg (In re
Resource Tech. Corp.*), No. 06 C 5541, 2007 WL 898423 (N.D.
Ill. Mar. 20, 2007). Scattered again appeals, and we affirm.

**I.**

RTC is a Delaware corporation that installs collection
systems at landfills to capture the methane gas created
by degrading waste and then either uses it to fuel electric
generators and produce electricity or sells the gas to
others. In December 1995, RTC entered into a contract
with ADS pursuant to which RTC committed to build and
operate gas-to-energy facilities at four ADS landfills in
Pontiac, Illinois, Wheatland, Kansas, Wyandot, Ohio, and
Clarion, Pennsylvania (hereinafter, the "agreement" or
the "ADS agreement"). The agreement was for an initial
term of ten years, expiring on December 21, 2005. RTC
had a right to extend the agreement beyond this term
(provided that the parties had not already terminated
their arrangement) for up to three consecutive periods of
five years. In order to exercise its right to extend the
agreement beyond its initial term, RTC was required to
send ADS by certified or registered mail written notice
of its intent to renew at least thirty days prior to the

December 21, 2005 expiration date, *i.e.*, no later than November 21, 2005. Allied Waste Industries ("Allied") later succeeded to ADS's rights under this agreement.

In 1999, RTC was placed involuntarily into Chapter 7 bankruptcy by certain of its creditors. RTC converted the proceeding to a Chapter 11 reorganization. RTC subsequently assumed that portion of its agreement with Allied relating to the landfill in Pontiac, Illinois, *see* 11 U.S.C. §§ 365(a), 1107(a), but did not assume the balance of the agreement concerning landfills in Wheatland, Wyandot, and Clarion. In September 2005, on the motion of several creditors, then-Chief U.S. Bankruptcy Judge Eugene Wedoff converted the case back to a Chapter 7 proceeding and appointed Jay A. Steinberg as the trustee of RTC's estate.

On November 16, 2005, the trustee's counsel wrote to counsel for Allied seeking to extend the deadline by which the ADS agreement could be renewed. The letter sought Allied's agreement to move the renewal deadline from November 21, 2005 to December 31, 2005. Allied's counsel replied on November 19, 2005, agreeing to the extension through December 31, 2005 insofar as the Pontiac landfill was concerned. Counsel added that it was Allied's view that the agreement had already terminated as to the three other landfills outside of Illinois (Wheatland, Wyandot, and Clarion). She therefore noted that Allied was consenting to the trustee's request for an extension of time to renew the ADS agreement only insofar as RTC had any remaining rights under that agreement and without prejudice to Allied's position that all but the Pontiac portion of the agreement had terminated. *Id.*

Although the deadline for renewing the Pontiac portion of the ADS agreement had thus been extended, the final

day of 2005 came and went without any renewal of the
agreement. Nor did the parties agree to any further ex-
tensions of the renewal date.

In March 2006, the Trustee entered into a settlement
agreement with Scattered, among other entities, resolving
certain disputes (the "settlement"). That agreement was
subsequently approved by the bankruptcy court. Pursuant
to the court's order approving the settlement, Scattered
obtained the right to designate certain of RTC's con-
tracts that Scattered wanted to take over. Once Scattered
designated a contract in which it was interested, the
trustee would seek the bankruptcy court's permission to
assume the contract and, upon securing that authority,
assign the contract to Scattered pursuant to sections 365(a)
and (f) of the Bankruptcy Code. However, the order
provided further that Scattered "shall not have the right
to designate any Contract . . . if the Estate believes in
good faith that a particular designation will result in the
Estate being subject to sanctions pursuant to Fed. R. Bankr.
P. 9011 or allegations of bad faith . . . ." In the event that
the trustee refused to pursue assumption and assignment
of a contract on that basis, the settlement entitled Scattered
to ask the bankruptcy court to compel the trustee to
assume and assign the contract in question.

Prior to the execution and court approval of the settle-
ment, the trustee had sought and obtained from the
bankruptcy court a series of extensions of time in which
to assume or reject executory contracts and unexpired
leases. The first of these motions was filed on November 8,
2005. In it, the trustee sought an extension of time until
January 31, 2006, to assume or reject a number of contracts,
among them the ADS Agreement. The motion indicated
that the ADS agreement was set to expire on December 21,

2005, and that there was a deadline of November 21, 2005 by which date notice of an intent to extend the contract had to be sent. The motion did not seek an extension of the life of the ADS agreement itself, only an extension of time for the trustee to assume or reject that contract and the others listed in the motion. Indeed, at the hearing on the motion, when Judge Wedoff inquired, "If [a] contract was terminated . . . , what more can be done?", the trustee's counsel responded, "If a contract was terminated, then it's terminated." In that vein, the trustee acknowledged Allied's position that a number of its agreements with RTC, including portions of the ADS agreement concerning facilities other than the Pontiac facility, had already been terminated. For that reason, the Trustee's request to assume the balance of the ADS agreement was continued. Following that hearing, the bankruptcy court on November 17, 2005, entered an order granting the trustee's motion and thereby extending until January 31, 2006, the time in which the trustee could assume or reject the Pontiac portion of the ADS agreement. The attachment to that order listing the contracts as to which time had been extended again indicated that the Pontiac portion of the ADS agreement was set to expire on December 21, 2005, and that the trustee had until November 21, 2005, to send a notice of his intent to extend the term of that contract. As we noted above, on November 19, 2005, Allied's counsel agreed to the trustee's request that the renewal deadline for ADS agreement be extended until December 31, 2005.

Subsequently, on November 30, 2005, the bankruptcy court entered a second order, this one expressly agreed to by and between the trustee and Allied, extending the trustee's time to renew or reject all portions of the ADS

agreement until January 31, 2006. The text of that order expressly acknowledged Allied's position that all but the Pontiac portion of the ADS agreement had already terminated and preserved Allied's right to so assert in future proceedings.

Scattered points out that there were two additional orders that granted extensions of time to the trustee for purposes of assuming or rejecting unexpired contracts and leases. On or about January 18, 2006, the trustee sought an extension of time to assume or reject from January 31, 2006 to February 28, 2006. The attached list of contracts as to which the trustee sought the extension included several contracts relating to the Pontiac facility, but not the Pontiac portion of the ADS agreement. Interestingly, the trustee did seek additional time to assume or reject the portions of the ADS agreement concerning the Wheatland, Wyandot, and Clarion landfills. And when the parties appeared before the bankruptcy court for the hearing on the motion, Allied's counsel objected to the request for more time on the ground that these portions of the agreement had already been terminated. Judge Wedoff made the following remarks concerning Allied's objection and a similar objection raised by the City of Columbus:

> THE COURT: [W]hat will happen, Ms. Gelman [counsel for Allied], is that I can grant this motion. And if the trustee should hereafter attempt to assume a contract that's already been terminated, I am sure you will let me know. And I am also sure that Mr. Steinberg wouldn't waste his time trying to assume an already terminated contract. So I think it is safe to grant this motion.

> MS. RZEPKA: Your Honor, Natalia Rzepka for the City of Columbus. I just wanted to state our objection

on the record. I believe Your Honor denied the debtor's motion to assume our contract back in 2003.

THE COURT: Right. It's covered by the same remarks that I just made.

MS. RZEPKA: Yes.

THE COURT: All that is happening here is that to the extent the trustee does have unexpired leases or unterminated executory contracts, this preserves the trustee's right to assume or assign those contracts. It would otherwise be cut off, and the contracts would be deemed rejected. If you've got a contract that's already terminated, it's not going to be affected by an extension.

The bankruptcy court's decision to grant the trustee's motion was memorialized in an order dated January 27, 2006; and, consistent with the trustee's motion, the attached list of contracts as to which the extension of time was being granted did not include the Pontiac portion of the ADS agreement. In accord with the court's remarks at the hearing on the motion, the order contained the following provisions qualifying the nature of the extension that the court was granting to the trustee:

1.  With respect to certain landfills identified on Exhibit A which are owned by American Disposal Services, Inc. and Allied Waste Industries, Inc. (collectively, along with its respective subsidiaries and affiliates, "Allied"):

    (a)  In regards to that portion of the December 21, 1995 contract involving the Wheatland, Clarion, and Wyandot landfill sites (the "Disputed Contract Sites"), and only to the extent RTC possesses any

contract rights to or at the Disputed Contract Sites (which Allied disputes), the time by which the Trustee can move to assume or reject the Disputed Contract Site portion of the contract is extended to February 28, 2006.

* * *

5. Nothing in this Order shall extend the right to assume or reject any contract that has already expired or been terminated and nothing in this Order shall be deemed to be a release or waiver of any right, claim or cause of action of any kind that any party (and/or its affiliates and subsidiaries) to such contracts may have that such contracts have expired and/or been terminated prior to the date of this Order.

The following month, as the February 28, 2006 deadline for assumption or rejection of these contracts approached, the trustee sought another extension of time to April 28, 2006. Again, although other Pontiac-related contracts were included in the list of contracts as to which the trustee was seeking additional time, the Pontiac portion of the ADS agreement was not among them. The court granted that motion on March 16, 2006. Its order contained the same qualifying language as the January 27 order.

It was also on March 16, 2006, that the bankruptcy court signed the order approving the settlement between Scattered (among other parties) and the trustee that gave Scattered the right to designate various contracts for assumption and assignment by the trustee. Scattered subsequently designated the ADS agreement as one of the contracts that it wished to assume. But the trustee's counsel, in the face of objections from Allied that the ADS agreement had by this time expired in its entirety, wrote to Scattered's counsel on May 12, 2006, to inform

Scattered that the trustee would not seek to assume the ADS agreement (among others) unless compelled to do so by the district court. Scattered proceeded to file a motion asking the bankruptcy court to do just that. Allied objected, contending that because the ADS agreement had expired by its terms on December 31, 2005, it could not be assumed as a matter of law, and consequently the trustee, if he sought to assume the contract, would be exposed to sanctions under Bankruptcy Rule 9011 and allegations of bad faith.

The bankruptcy court heard Scattered's motion on June 13, 2006 and concluded that because the trustee had no plausible basis on which to assume the ADS agreement, which had clearly expired, he had properly refused Scattered's demand to seek assumption. The ADS agreement was one of a number of agreements as to which the trustee had declined to file motions to assume and that were consequently the subject of motions to compel. The essential inquiry, as the court acknowledged at the start of the hearing, was whether the trustee would be making a frivolous motion, subject to sanctions under Rule 9011, were he to move to assume these contracts.

> The underlying question with all of these is whether the trustee is reasonably asserting that to pursue a motion here would violate the trustee's obligations under Rule 9011, and so the question here is whether the trustee has a good basis for believing that pursuing an assumption here would violate 9011.

The court went on to agree with Allied's counsel that the ADS agreement had expired on December 31, 2005, with the result that there was no longer a valid contract for the trustee to assume and assign to Scattered. The court rejected the suggestion of Scattered's counsel that a

hearing was required in order to determine whether the extensions of time the court had granted the trustee to assume or reject the agreement had also extended the time to renew the agreement.

> There is . . . no need for a hearing. The question that's being raised now is whether an order extending the time for assumption or rejection of an unexpired [contract] somehow has the effect of extending the [contract] or extending a deadline for renewal under the [contract]. Those really are two separate questions. And each time that there was a motion to extend the time for assumption or rejection, I heard arguments to the effect that this has already expired, to which my response was if it's already expired, extending the time for assumption or rejection will have no impact on the expiration.

> So given that we're dealing with two separate issues (1) whether the contract has expired and (2) whether the time for assumption or rejection of the contract can be extended, I think unless you can point to something, an agreement, an order of the court that extended the time for extending the contract under the contract terms, there is no basis for the trustee to assume this contract.

When pressed to identify any court order or agreement extending the renewal date of the ADS agreement beyond its expiration date of December 31, 2005, Scattered's counsel could point only to the orders granting the trustee's requests for additional time to assume or reject the contract. The court rejected the notion that those orders might have extended the life of the agreement:

> Okay. I don't think so. We have always made a distinction between extending the time for the estate to

assume or reject and the question of whether the underlying agreement was terminated. And given that there is that distinction, which, again, was repeatedly made as I granted motions to extend the time for the trustee to assume or reject, the distinction was always made that granting the motion in no way implied that the underlying agreement had not terminated. That was always a separate consideration. If there is nothing that prevents the expiration of the underlying agreement according to its terms other than an allegation that an order extending the time for the estate to assume or reject is in place, the trustee does not have a basis for going forward on it.

When Scattered's attorney suggested that the trustee might nonetheless have understood or have intended for these orders to extend the renewal date, the court pointed out that the trustee's subjective and unilateral understanding would not have been sufficient to override the terms of the orders and the underlying contract. Acknowledging that a bilateral agreement between the trustee and Allied would have been necessary to extend the life of the agreement, Scattered's counsel suggested that there might be a factual question as to whether Allied too had intended for the orders to extend the renewal date; but the court found no basis to support such a question:

> No, you're not going to find anything, I am confident, in the record where Allied's counsel acknowledges that an extension of time to assume or reject constitutes an extension of the underlying agreement that's subject to assumption or rejection. They've been here vociferously arguing for a substantial period of time that the agreement had terminated. And entering an order granting the trustee a right to con-

tinue the time for assumption or rejection has no
impact on that. . . .

The court therefore denied Scattered's motion to com-
pel the trustee to assume and assign the ADS agreement.

Scattered appealed to the district court, which affirmed
the bankruptcy court's decision. The court first rejected
Scattered's contention that the bankruptcy court, in de-
termining whether the ADS agreement had expired,
strayed beyond the issue that was actually before it, *i.e.*,
whether the trustee had a good faith belief that he
would be sanctioned under Rule 9011 if he sought to
assume and assign the agreement as Scattered had de-
manded. "Though the court may not have used the magic
words that appellants seem to think were necessary, it is
clear that the court was considering the correct issue." 2007
WL 898423, at *3. The court observed that whether the
agreement had expired was "intertwined" with the ques-
tion of whether the trustee had a good faith basis for
declining to pursue assumption of the agreement. *Id.* "[I]f
there was no objectively reasonable argument that the
ADS agreement had not expired, then the trustee could
not properly pursue an assumption and assignment of
that agreement." *Id.* The court found no fault with the
bankruptcy court's determination that the agreement
had, in fact, expired. Scattered's argument to the con-
trary rested on the notion that the bankruptcy court's
orders allowing the trustee more time to assume or
reject the agreement somehow extended the life of the
agreement, but the orders themselves offered no support
for that notion. "Everyone but the appellants, it seems,
understood the effect of the extension orders." *Id.* at *4.
Finally, the court found no error in the bankruptcy
court's denial of Scattered's request for an evidentiary

hearing. "Appellants do not point to any evidence they would have introduced at an evidentiary hearing that would have affected the outcome of the motion to compel." *Id.* Although Scattered suggested that there were disputed questions of fact as to the intent of Allied and the trustee vis-à-vis the ADS agreement, their subjective intent was immaterial. There was no dispute as to the relevant provisions of the agreement or as to the orders granting the trustee additional time to assume or reject the agreement. Consequently, even assuming that extrinsic evidence as to the parties' subjective understanding of those matters would have been admissible, it would not have had any bearing on the bankruptcy court's resolution of the motion to compel. *Id*.

## II.

Our first task is to confirm that we have jurisdiction to hear this appeal, *e.g.*, *JMS Dev. Co. v. Bulk Petroleum Corp.*, 337 F.3d 822, 825 (7th Cir. 2003), and we are satisfied that we do. 28 U.S.C. § 158(d)(1) gives us jurisdiction to review "final" decisions of the district court resolving bankruptcy appeals. In this case, the district court affirmed the bankruptcy court's order denying Scattered's motion to compel the trustee to assume and assign to Scattered a contract between Allied and the debtor, RTC. At least as of the time this appeal was briefed, there were other, unrelated agreements between Allied and RTC that Scattered wished the trustee to assume and assign, and the disputes over those agreements had not yet been resolved. Consequently, we cannot say the order at issue here is final in the sense that it conclusively resolved all of the claims of one creditor—Scattered—against the estate. *See Golant v. Levy (In re Golant)*, 239 F.3d 931, 935

(7th Cir. 2001); *In re Morse Elec. Co.*, 805 F.2d 262, 264
(7th Cir. 1986); *see also Fruehauf Corp. v. Jartran, Inc. (In re
Jartran, Inc.)*, 886 F.2d 859, 863 (7th Cir. 1989). But the
bankruptcy court's order does definitively resolve Scat-
tered's unsuccessful attempt to have the trustee assume
and assign one contract; and the issues raised with re-
spect to that contract appear to be distinct and severable
from the proceedings on other contracts between Allied
and RTC. We see no reason why, consistent with the
more flexible jurisdictional standard that we and other
appellate courts apply to bankruptcy appeals, this
matter cannot be resolved now, thereby advancing the
ultimate resolution of RTC's bankruptcy. *See Golant*, 239
F.3d at 935. We may therefore proceed to the merits.

Scattered's threshold contention is that the bankruptcy
court prematurely and improperly determined that the
ADS agreement had expired. Under the terms of the
settlement between Scattered and RTC, the essential
question before the bankruptcy court was whether the
trustee had a good faith belief that he would be subject
to sanctions if he moved to assume the ADS agreement
as Scattered wished him to do. In Scattered's view, it
was neither necessary nor appropriate for the court to
resolve whether the ADS agreement had expired; all that
the court needed to determine was whether a motion by the
trustee to assume the agreement would be frivolous, and
therefore subject to sanctions under Bankruptcy Rule 9011.
*Cf. Orion Pictures Corp. v. Showtime Networks, Inc. (In re
Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993)
(error for bankruptcy court to resolve factual disputes
regarding alleged breach of contract, where only question
properly before the court was whether debtor or trustee
should be permitted to assume the contract); *but see In re*

*White Glove, Inc.*, Nos. 98-12493DWS & 98-12494DWS, 1998 WL 731611, at *4 n.12 (Bankr. E.D. Pa. Oct. 14, 1998) (coll. cases questioning holding of *Orion Pictures*).

However, the record leaves no doubt that the bankruptcy court understood what the relevant inquiry was and properly answered it. The court not once but twice remarked that the underlying question posed by the motions to compel the trustee to assume various contracts was whether the trustee would be violating his obligations under Rule 9011 by moving for assumption. With respect to the ADS agreement, the trustee's concern about Rule 9011 sanctions arose from the apparent expiration of the agreement. Scattered itself agrees that "[i]f the ADS Agreement expired, there would be nothing for the Trustee to assume or reject." Scattered Br. 13. *See* R. Ginsberg & R. Martin, GINSBERG & MARTIN ON BANK-RUPTCY § 7.01[C], at 7-8 n.37 (4th ed. 1995) (updated & current through 2007) ("Of course, if the executory contract (or lease) expires by its own terms during the postpetition, pre-assumption/rejection period, the trustee will have nothing to assume or reject."). Scattered is certainly correct in contending that the susceptibility of a claim (or argument) to sanctions under Bankruptcy Rule 9011 or Federal Rule of Civil Procedure 11 does not necessarily require resolution of the merits of the underlying claim. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396, 110 S. Ct. 2447, 2456 (1990) (order imposing Rule 11 sanctions "does not signify a district court's assessment of the legal merits of the complaint"); *see also Willy v. Coastal Corp.*, 503 U.S. 131, 112 S. Ct. 1076 (1992) (court can impose Rule 11 sanctions even if, in retrospect, it lacked subject matter jurisdiction over merits of the case). But that does not mean that the question of sanctions

can be divorced from the merits of the claim deemed sanctionable. Obviously, a court cannot determine whether a claim has a reasonable basis in law or fact, *see* Rule 9011(b)(2) and (3), without examining the legal and factual foundations of the claim; to that extent, the charge that a claim is sanctionable necessarily overlaps with the merits of the claim. *See Cleveland Hair Clinic, Inc. v. Puig*, 104 F.3d 123, 125 (7th Cir. 1997); *City of E. St. Louis v. Circuit Court for Twentieth Judicial Circuit, St. Clair County, Ill.*, 986 F.2d 1142, 1143 (7th Cir. 1993). Thus, in assessing whether the trustee had a good faith concern about sanctions, the court necessarily had to consider whether there was a plausible basis to argue that the ADS agreement had not, in fact, expired. That is precisely what the court did: it considered the parties' respective positions as to the expiration of the ADS agreement and concluded that there was no reasonable factual or legal basis for the contention that the agreement had not expired, such that the trustee could move to assume the contract without fear of being exposed to sanctions. Scattered was not deprived of any right by the manner in which the court proceeded. The settlement between Scattered and the estate, and Scattered's motion to compel, put the propriety of a motion to assume the ADS agreement squarely in the bankruptcy court's hands. The court gave Scattered a full opportunity to identify a basis on which the ADS agreement could be thought not to have expired; the court simply found that none of the bases that Scattered identified was plausible.

Here as below, Scattered points to the orders extending the time for the trustee to assume or reject the ADS contract as a basis for contending that the agreement had not expired; but we are no more persuaded than the lower

courts were. These were the bankruptcy court's own orders, and we must defer to its understanding of what those orders accomplished unless its interpretation was unreasonable. *See Enodis Corp. v. Employers Ins. of Wausau (In re Consol. Indus.)*, 360 F.3d 712, 716 (7th Cir. 2004). The language of these orders was limited to the time in which the trustee could assume or reject the agreement; nothing in any of the orders spoke of extending the time to renew the ADS agreement. Nor did the trustee, in moving for the entry of these orders, say anything about extending his time to renew the ADS agreement. There is a plain paper trail to the one instance in which the trustee did obtain an extension of time in which to renew the ADS agreement: in that instance, in accord with the provisions of the agreement, the trustee wrote to Allied's counsel and requested an extension from November 25, 2005 to December 31, 2005 to send notice of his intent to renew the Pontiac portion of the agreement. Allied agreed, and the renewal date was extended for that portion of the agreement. That exchange demonstrates that the trustee was well aware of the process by which he could obtain additional time to renew the ADS agreement. Notably, the two orders granting the trustee additional time to assume or reject the Pontiac portion of the agreement—the first, entered on November 17, 2005, being a general order dealing with multiple agreements including the Pontiac portion of the ADS agreement, and the second, entered on November 30, 2005 dealing specifically with the Pontiac portion of the agreement—were entered prior to the extended deadline of December 31, 2005 for renewal of the Pontiac portion of the agreement. After December 31, 2005 came and went without renewal, the motions seeking additional time for the trustee to assume or reject the estate's contracts and leases made no further mention of

the Pontiac portion of the agreement, nor did the orders granting those motions mention it. Additional extensions of time to assume or reject were sought as to other portions of the ADS agreement. But as to those portions of the agreement, Allied consistently took the position that the agreement had already been terminated. And for his part, the trustee from the beginning acknowledged that granting him an extension of time to assume or reject the agreement would not somehow revive a contract that had already been terminated. The court itself acknowledged the same, and its later orders memorialized that acknowledgment.

Scattered suggests that there are unexplored questions as to what the trustee's intent was in moving to extend the time to assume or reject—questions that Scattered thinks raise doubts as to whether the ADS agreement actually expired—but we disagree. Scattered offers no explanation as to why the trustee's (unexpressed) intent could have any impact on the expiration of the agreement. *See*, *e.g.*, *Sethness-Greenleaf, Inc. v. Green River Corp.*, 65 F.3d 64, 67 (7th Cir. 1995) (applying Illinois law) ("Contractual obligations are created and defined by objective signals the parties exchange. Private expectations are of no consequence.") (citations omitted); *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987) ("defendant's subjective understanding of the terms of the contract is immaterial"); *Carey v. Richards Bldg. Supply Co.*, 856 N.E.2d 24, 27 (Ill. App. Ct. 2006) ("it is commonly stated that undisclosed intentions are not relevant" in contract interpretation). Contrary to Scattered's contention, this is not a case like *M.K. Labs., Inc. v. Int'l Developers (In re M.K. Labs., Inc.)*, 86 B. R. 12 (Bankr. D. Conn. 1988), where the parties on two occasions, in stipulating to an extension of the debtor's time to assume or

reject an unexpired lease, recited that the lease still had eleven more years to run when in fact the lease had only months left to run and the first option to extend the original term had already expired. Under that circumstance, the bankruptcy court concluded that the landlord either actually or impliedly had agreed not only to extend the debtor's time to assume or reject the lease, but to extend the option to renew the lease as well. *Id.* at 14. Here, there is no such manifestation of a shared belief as to the continued life of the ADS agreement. Allied from the beginning maintained that the ADS agreement had expired except as to the Pontiac facility; it agreed only to one extension of time to renew the Pontiac portion of the agreement; and once the extended renewal date as to the Pontiac facility passed without the trustee renewing that portion of the agreement, Allied contended that the entire agreement had expired. The trustee plainly knew what was required to extend the life of the agreement but made no effort to do so beyond December 31, 2005. Any unexpressed belief on his part that the agreement survived beyond that date could not have trumped the unambiguous terms of the agreement or the unambiguous terms of the orders granting him additional time to assume or reject the ADS agreement.

Scattered also suggests that Allied may have somehow waived or become estopped from asserting the expiration of the ADS agreement, but the record bespeaks the contrary. As we have just said, Allied consistently took the position that all but the Pontiac portion of the ADS agreement had already been terminated before the trustee began seeking additional time to assume or reject the agreement, and once the extended renewal date of December 31, 2005, passed without the trustee renewing the Pontiac portion of the agreement, contended

that that portion of the agreement had expired as well. Allied's counsel always maintained that the extensions of time to assume or reject could have no impact on the expiration of the agreement. Judge Wedoff expressly acknowledged that this had always been Allied's position, and his own remarks and orders in granting the trustee's motions for additional time to assume or reject recognized that these extensions would not revive an otherwise expired agreement. The notion that Allied somehow sat on its rights and could be precluded from arguing that the ADS agreement expired is untenable.

Finally, we, like the district court, reject Scattered's contention that the bankruptcy court was obliged to conduct an evidentiary hearing before denying its motion to compel the trustee to assume and assign the ADS agreement. The notion that an evidentiary hearing was required assumes that the existing record as to the expiration of the ADS agreement was somehow ambiguous or incomplete and that additional evidence was necessary to fill in the gaps. But as we have discussed, nothing in the record before the bankruptcy court raised any doubt as to the expiration of the ADS agreement. Moreover, Scattered has never articulated what evidence it might present at such a hearing that would be relevant to the expiration of that agreement and to the trustee's good faith in refusing to seek the assumption of that agreement. Even when asked at oral argument, Scattered's counsel was unable to identify any evidence that it might have produced at such a hearing. *See*, *e.g.*, *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 804 (7th Cir. 1992) (appellate argument as to district court's failure to conduct hearing waived where, *inter alia*, appellant did not identify what evidence court would have heard at hearing other than evidence

already before the court). As the bankruptcy court itself concluded, no such hearing was necessary.

### III.

   As the district court held, the bankruptcy court committed no error in denying Scattered's motion to compel the trustee to assume and assign the ADS agreement. Because the agreement had expired and there was no plausible argument to the contrary, the trustee would have been violating his obligations under Bankruptcy Rule 9011 had he sought to assume the agreement. For these and the other reasons we have discussed, we AFFIRM the district court's judgment.

---